## Howell v. Chaney.

(Decided May 21, 1918.)

### Appeal from Taylor Circuit Court.

1. Executors and Administrators—Accounting—Agreement—Report of Master Commissioner.—In an action to settle an estate, where, by agreement of the parties, the master heard proof, a party can not object to the making of a report by the master based on such evidence on the ground that there had been no order of reference to the master for an accounting.

2. Gifts—Action—Evidence—Burden of Proof.—In an action involving title to personal property claimed by defendant through gift from her father, the confidential relationship between donor and donee casts the burden on donee to prove the transaction free, voluntary and void of any vice rendering it inequitable and unfair.

3. Gifts—Mental Capacity of Donor—Trial—Evidence.—In such action, evidence held sufficient to show mental capacity of donor to make the gift at time of making it.

4. Gifts—Trial—Evidence.—Evidence held sufficient to sustain a gift inter vivos of personal property.

H. W. RIVES for appellant.

W. M. JACKSON for appellee.

OPINION OF THE COURT BY JUDGE CLARKE.—Affirming.

On July 6, 1914, A. J. Young, at the age of ninety-two years and seven months, died a resident of Taylor county, at the home of his daughter, Rebecca F. Chaney, with whom he had resided for about twenty-five years. On November 2, 1914, the will of A. J. Young, bearing date of May 22, 1905, was probated, and his son, John R. Young, named therein as executor, declining to qualify, another son, Joe M. Young, was appointed administrator with the will annexed.

Thereafter, this suit was filed by Joe M. Young, as administrator and in his own right, and Mary E. Howell, a daughter of decedent, against Rebecca F. Chaney, John R. Young and W. L. Young, the other children of decedent, for a settlement of his estate, and asking that Rebecca F. Chaney be required to report and account for about $1,700.00 worth of personal property that belonged to the decedent, which, it was alleged, she held and refused to turn over to the administrator. Mrs. Chaney answered denying that decedent had any property at the time of his death and alleging that he had,

prior to his death, given to her all of his personal property in consideration of what she had theretofore done for him and the further consideration that she would continue to board and care for him as long as he lived and pay his funeral expenses. Plaintiffs denied the gift and pleaded that decedent, at the time of the gift, was not of sufficient mental capacity to make, or to understand the effect of, a gift or contract.

The record contains no order of reference to the master commissioner, but after the issues had been completed the parties, by agreement, took a large volume of evidence by deposition before the master, and at the term of court next before the one at which the judgment was entered, the master was directed "to conclude his taking of depositions and file his report in this case at said term of court." At the next term of the court, the master commissioner did file his report, which, after reciting the evidence in detail upon the question of the mental capacity of A. J. Young, summarized same as follows:

"After hearing all the witnesses testify and carefully considering all the testimony bearing on the question of the competency of said A. J. Young's mind to make said gift to his daughter, Rebecca Chaney, at the time it was made, and the express agreement made between the donor and donee, at the time it was made the donor, A. J. Young, saying, 'Here Becky is every dollar I have got and I give it to you. You have taken care of me a long time; I have lived with you twenty odd years and I want you to have everything I have got. I want you to take care of me and pay all of my expenses,' thus recognizing his obligation and she having complied with his request by continuing to care for him and to furnish him a home the rest of his life, your commissioner is clearly of the opinion that A. J. Young had mental capacity sufficient to dispose of his property at the time he made the gift to Rebecca Chaney, and that it is not only a valid but a just gift."

The master recommended that Mrs. Chaney be adjudged the money and property in controversy received from her father as a gift. Plaintiffs filed exceptions to this report of the master, not only as to his findings and recommendations but also as to his right to make any report at all. The court overruled the exceptions to this report, except as to one item, a note of $141.00, which was adjudged to belong to Mrs. Howell, and gave judg-

ment to Mrs. Chaney for the money she claimed her father had given to her, amounting to $999.37, after crediting her with a $550.00 check it is admitted her father gave to her on July 27, 1911, for the purpose of equalizing her at that time with the rest of the children, except Mrs. Howell.

From this judgment Mrs. Howell has appealed, insisting that the judgment is palpably against the preponderance of the evidence as to the mental capacity of A. J. Young at the time of the claimed gift; and that the cause never having been referred to the master, he was without authority to make a report, and the judgment based thereon ought to be reversed.

A sufficient answer to this latter objection is that the plaintiffs agreed to the taking of proof before the master as though there had been an order of reference to him for that purpose and made no objection until after it was discovered that his report was adverse to them. But, aside from this, it is immaterial what the master reported or whether his report was regularly made, since it was only advisory; and the only question about which we need concern ourselves is whether the judgment is sustained by the evidence.

Mrs. Chaney proved that the gift or contract with her father was made in August or September, 1911, by three witnesses, her son, daughter-in-law, and a niece who had no interest in the matter in any way and is related in the same way to all of the parties to this action. There is no denial or contradiction of this evidence, but owing to the confidential relationship existing between the donor, who was old and physically infirm, the burden was upon the donee to prove that the transaction was freely and voluntarily made and void of any vice rendering it inequitable or unfair. Davidson v. Davidson, 180 Ky. 190, and authorities cited therein. There is no evidence whatever to indicate that the gift was not made freely and voluntarily, as the witnesses for Mrs. Chaney stated it was made; while, upon the question of his mental capacity at that time, a great many witnesses testified, and their testimony is conflicting, although we think the clear preponderance of the evidence is upon the side of his being mentally capable at the time the gift was made. The only physician who testified was the attending physician of the decedent, and he stated that decedent's mind was all right during the fall of 1911 and until in April, 1912, when he had a severe spell of

sickness, during which he was, at times, out of his mind, and after which all of the witnesses agree his mind was seriously impaired.

In addition to the opinion evidence as to the condition of his mind at the time of the gift in August or September, 1911, is the proven fact that his children, other than Mrs. Howell, recognized his capacity to make a partial settlement of his affairs with them at a meeting at Salome on July 27, 1911, and no question is made by anybody to this suit of the validity of his acts upon that date. While Mrs. Howell was not at that meeting, she accepted from him thereafter as advancements several sums of money aggregating $225.00, with which she acknowledges she should be charged. So while the mental capacity of the decedent was recognized on July 27, 1911, by all of the parties except Mrs. Howell, and she had business transactions with him after that date, yet, she is now claiming that, at the time of his gift, in less than two months thereafter, he did not have the mental capacity to understand what he was doing, although it is shown rather conclusively that the condition of his mind did not change materially, if at all, from the time of the Salome meeting until his illness in April, 1912.

There is yet another fact proven which tends strongly to support the gift, if such it ought to be called rather than a contract, and that is that Mrs. Chaney fully complied with the conditions attached to the gift that she would board and care for the donor as long as he lived, in the same satisfactory manner that she had already performed these services for more than twenty years, and that she would defray his funeral expenses when he died. It is thoroughly established that, after his illness in 1912, the decedent was almost helpless and a great care and that from then until his death in July, 1914, Mrs. Chaney not only boarded and nursed him most attentively and almost without assistance from his other children, performing for him such services as a baby requires and that can or will be rendered only by one actuated by affection and a high sense of duty; but it is also proven that she earned every cent she got; and the gift was therefore not inequitable or unjust, but it would be extremely inequitable and unjust to deprive her of this measure of recompense for her long, difficult and loyal service.

As was said in Carrington's Exor. v. Fogg, 7 Ky. L. R. 596:

"In an action to set aside a gift on the ground of the mental incapacity of the donor, if the evidence as to capacity is so conflicting that a satisfactory result can not be reached by that test, resort must be had to the transaction itself, and it will be upheld if rational and just, or overturned if irrational or unjust."

We are convinced the judgment of the chancellor is not against, but is fully sustained by, the evidence, and it is affirmed.