PATRICK F. KELEHER ET AL., Appellants and Respondents, v. EDWARD P. JOHNSON, Admr., etc., of JOHN B. HENDERSON, deceased, Respondent and Appellant.

St. Louis Court of Appeals.   Argued and Submitted October 7, 1918.
Opinion Filed November 6, 1918.

1. **APPELLATE PRACTICE:** Court of Appeals Follows Decisions of Supreme Court: Law of Case: Champertous Contract. While it is true that the Supreme Court held, when this case was before it, that the defense of champerty was an affirmative defense which must be pleaded, and that it had not then been pleaded, yet the opinion discloses the fact that the Supreme Court did have before it the contract in question and held that it was valid and not champertous, and the Court of Appeals is bound to follow the decision of the Supreme Court in its decision on it in this same case and so hold the contract to be valid.

2. ———: Reference: Rule of Review: Compulsory Reference. In a suit at law involving a long account, which would make it a case for compulsory reference, the finding of the referee, when approved by the trial court, has the force and effect of a special verdict of the jury, and is binding on appeal, if supported by substantial evidence.

3. **CONTRACTS:** Construction: Profits and Expenses. Where plaintiffs procured litigation for defendants under an agreement which provided that plaintiffs shall pay one-half of any and all reasonable expenses or sums of money necessary and proper for defendants to expend to insure the successful prosecution of the suit, and that plaintiffs were to share equally with defendants, in the expenses and profits accruing from said suit, plaintiffs were liable for one-half of the necessary expenses of collecting the judgment as well as those of obtaining it.

Appeal from the Circuit Court of the City of St. Louis.
—*Hon. Wm. M. Kinsey,* Judge.

AFFIRMED.

*Robe. E. Collins,* for appellant-respondent.

(1)   The referee erred in allowing to plaintiff half only of a twenty-five per cent fee on the amount collected by the defendant in the Davis case.   Cromwell v. County of Sac, 94 U. S. 351; Nesbit v. District, 144 U. S. 610; 17 Am. & Eng. Ency. of Law (2 Ed.), p. 480. (2)   The referee erred in allowing the defendant to record or set off the several items of expense, aggregating the sum of $3313.26, and each of said items. (3)   Defendant's exceptions 1, and 2, should be entirely disregarded, since they do not call to the court's attention the specific error complained of. Smith v. Haley, 41 Mo. App. 611; State ex rel v. Woods, 234 Mo. 16; Burren v. Blair, 61 Mo. 133; 17 Am. & Eng. Ency. of Law (2 Ed.), 17; Turner v. Mellier, 59 Mo. 526; St. Louis Steam Heating Co. v. Bissell, 41 Mo. App. 426; Atterbury v. Hopkins, 122 Mo. App. l. c. 175; Chapman v. Currie, 51 Mo. App. l. c. 45; 1 Am. & Eng. Ency. Law (2 Ed.), 1074; Mining Co. v. Fox, 4 Iredell's Eg. 61; Wann v. Scullin, 210 Mo. 429; Same case, 235 Mo. 629; Clubb v. Scullin, 235 Mo. 585; Ashley v. Shaw, 82 Mo. 76; Donnell v. Harshe, 67 Mo. 170; McDonald v. Matney, 82 Mo. 358; Musser v. Brinck, 68 Mo. 242; Iron Co. v. McCleverty, 89 Mo. App. 154; Machie v. Mott, 146 Mo. 230; Byrd v. Fox, 8 Mo. 574; Buckner v. Ries, 34 Mo. 357; Bambrick v. Simms, 132 Mo. 48; 22 Am. & Eng. Ency. Law (2 Ed), 864-876; Conrad v. Fisher, 37 Mo. App. 403; Richardson v. Ashley, 132 Mo. 243; Railway v. Flanagan, 113 Ind. 88; Foster v. Leninger, 33 Ind. App. 669; Train v. Gow, 5 Pick. 380; Sav. Ins. v. Buchanan, 60 Minn. 504; Hunt on Tender, sec. 458; Hatch v. Thompson, 67 Conn. 74; Henderson v. Cass Co., 107 Mo. 50; Berthold v. Reyburn, 37 Mo. 587; Tobacco Co. v. Walker, 123 Mo. 671; Utley v.

Hill, 155 Mo. 277; Williams v. Railway, 153 Mo. 495. (3) Error was committed in preventing the plaintiff from sharing in the fee as applicable to the Walther, Thornberry and Stover bonds. (4) The court erred in finding and adjudging and holding as a conclusion of law that the plaintiff Little was not entitled to recover a joint judgment with his co-plaintiff Keleher. (5) The court erred in finding, holding as a conclusion of law and adjudging that the plaintiff was equally interested in the process of the Henderson & Shields contract. (6) The court erred in finding in favor of the plaintiff Keleher only as to one-half of the amount the referee and the court determined was due to both plaintiff under the Henderson & Shield's contract.

*E. P. Johnson, S. Mayner Wallace, Wm. R. Orthwein* and *Shepard Barclay,* for respondent-appellant.

(1) On the admitted facts, found by the learned referee, plaintiffs were agents for defendant. As such agents, they solicited the bond holders to sign the contracts ("Exhibits D, E, F, and G") on the forms printed for that purpose by plaintiffs, who also became by the terms of those contracts, "trustees" for the signers of the papers, and became also depositaries of the subject-matter of the contracts (the bonds and coupons) "in trust for the just and correct fulfillment of" those contracts between plaintiffs, defendant and those bondholders. "Exhibit A" (on which this suit is based) is an agreement for one-half of the lawyers' fees, accruing from such solicitation of business, as compensation of plaintiff for said "services" (as therein recited) as agents "in procuring from the bondholders of Knox County, Mo.," the bonds and coupons "to be sued upon." Such a contract (as is "Exhibit A") is champertous, against public policy and unenforceable. Gammons v. Johnson, 76 Minn. 81, 78 N. W. 1035; Mechem, Agency (2 Ed.), secs. 83, 1523; Alpers v. Hunt, 86 Calif. 78; Holland v. Sheehan, 108 Minn. 365, 122 N. W. 1. (2) Mr. Little of plaintiffs' firm

had the forms printed, obtained the signatures of the bondholders, and also obtained the bonds and coupons from the bondholders (as per "Exhibits D, E, F, and G") December 6, 1877, and thereby secured their own appointment as "trustees" and as custodians of the bonds and coupons "in trust for the just and correct fulfillment of" those contracts. Retaining these contracts themselves, plaintiffs afterwards delivered to Henderson & Shields the coupons for suit, and, thereby, obtained the execution of "Exhibit A", February 20, 1878, as plaintiffs' compensation for "procuring" that business. The whole transaction is champertous and against public policy and unenforceable. Mechem, Agency (2 Ed.), sec. 83. "When the broker is privy to the unlawful designs of the parties, and brings them together for the very purpose of entering into an illegal agreement, he is *particeps criminis*, and cannot recover for services rendered or losses incurred by himself on behalf of either in forwarding the transaction." Irwin v. Williar, 110 U. S. 499, by Mr. Justice MATTHEWS, followed and cited by Judge BLACK; Crawford v. Spencer, 92 Mo. 506; Josephs v. Pebrer, 3 Barn. & C. 639; Hurd v. Taylor, 181 N. Y. 231. (3) The illegality of "Exhibit A," the agreement on which plaintiffs' claim is founded, appears on the face of the papers; hence, it was not necessary to plead champerty as a defense. McDermott v. Sedgwick, 140 Mo. 172; Approved, Keleher v. Henderson, 203 Mo. 513; Best v. Strong, 2 Wend. 319; Nash Co. v. Wright, 156 Ill. App. 243. (4) Nevertheless, in view of the decision of this Court on the first appeal, the defendant, later in the trial court, expressly pleaded champerty as a defense, so that defense was available at the last trial below. Keleher v. Henderson, 203 Mo. 512. (5) Champerty therein is not only a valid objection to the enforcement of a contract by the agent who solicited its execution, but it is odious to sound public policy. Gammons v. Johnson, 76 Minn. 81; Duke v. Harper, 66 Mo. 51. (6) Plaintiffs negotiated the champertous agreements and by their terms became "trustees" for their "just

and correct fulfillment;'' as such "trustees" the plaintiffs are mentioned in "Exhibit A," which thereby associates those contracts as part of the terms of "Exhibit A." Contracts, like statutes, *in pari materia,* are to be construed together. Leake, Contracts (5 Ed.), 148. (7) A layman, who seeks law business and obtains a contract from a client for the same, and then brings it to a lawyer for suit, and so obtains a contract based thereon to receive half of the fee to be earned by the lawyer, cannot recover thereon, as such a contract is champertous and against public policy, whether the client's agreement concerning the suit be champertous or not. Gammons v. Johnson, 76 Minn. 81; Holland v. Sheehan, 108 Minn. 365; 2 Elliott, Contracts, sec. 732. (8) The contracts in Exhibits D," "E," "F" and "G" are brought into "Exhibit A" by the terms of the latter, and should be treated as one contract with it. Where several instruments are part of one transaction, they will be read together, and each will be construed with reference to the other. Leake, Contracts (5 Ed.), 148; Knowles v. Toone, 96 N. Y. 534; Water Co. v. Aurora, 129 Mo. 578; Stacey v. Randall, 17 Ill. 467. (9) There was a total failure of proof of the contract as alleged in "Exhibit A." Laclede Con. Co. v. Iron Works, 169 Mo. 137, 154; Green v. Cole, 127 Mo. 587, 599; Ingwerson v. Railroad, 205 Mo. 318; Mathiason v. Railroad, 219 Mo. 542; Barber v. Ozark Imp. Co., 131 Mo. App. 717. (10) The contract fees being payable in bonds were not otherwise payable, and the petition is not framed properly for recovery on the contract as made.

## STATEMENT.

This is an action at law brought by plaintiffs against John B. Henderson, commenced by filing a petition in the circuit court of the city of St. Louis, on May 20, 1897. Briefly stated, its object is to recover the sum of $10,000, with interest thereon, from October 17, 1894, which plaintiffs claim to be due them from defendant in connection with certain bond litigation. As the

petition upon which the case was tried is the same as set out substantially in the case of Keleher et al. v. Henderson, 203 Mo. 498, 101 S. W. 1083, at pages 502 and following, we do not consider it necessary to repeat it, and refer for it to the opinion of the Supreme Court when the cause was before it, as above cited.

The answer upon which the case was last tried, is the third amended answer. After admitting the partnership of plaintiffs and of Henderson and Shields, it admits that the latter had signed the agreement with plaintiffs, which is set out in the petition and in the opinion of the Supreme Court in the case above cited, and avers that, except as admitted in the answer, the defendant Henderson denies each and every allegation in the petition.

It is further specifically set out in this answer that an agreement, attached and pinned to the exhibit set out by plaintiff, but not set out in the petition, was in force at the time that the contract set out in the petition was signed by the firm of Henderson & Shields, and was attached thereto and is as follows:

"St. Louis, ............, 187...

TO THE BONDHOLDERS OF ...............

It is hereby proposed by the undersigned to institute and prosecute to final judgment, a suit or suits, in the Circuit and Supreme Courts of the United States, at own proper cost, charge and expense, on the matured coupons from bonds of the County of ............, State of Missouri, issued in behalf of ........... Township to ........ and dated ...... day of ........,18...

And upon obtaining final judgment in favor of the bondholders, to receive for services rendered therein, twenty-five (25) per cent of the total amount of bonds and coupons involved in such suits, which shall constitute the full and entire fee to be paid us.

In case of loss of any such suit, we hereby obligate and bind ourselves to pay all costs thereon, of whatever nature, and to be entitled to no fee whatever, or other claim upon said bondholders.

Provided, however, that we shall not be required to institute any suit until the amount of coupons sueable against any one county in one proceeding, shall reach the sum of $5000.

And, provided further, that not less than twenty-five (25) per cent of the bonds—the coupons of which are to be sued upon—shall be deposited with P. F. Keleher & Co., of St. Louis, to be held by them, in trust, for the fulfillment of the terms and conditions of this proposition.

All communications to be addressed to P. F. Keleher & Co., 307 North Third Street, St. Louis.

HENDERSON & SHIELDS.

(So the name is spelled in the exhibits and answer.)

Messrs. P. F. Keleher & Co.

St. Louis:

In accordance with the above proposition, I hand you herewith the following matured coupons:

........ at $........ each, ........ $........, also $........ in bonds, as described in said proposition, to be held by you in trust for the just and correct fulfillment of above proposal, which is agreed to by the undersigned.

Witness:————.''

Following this, it is averred that the agreement created by the execution of the contract set out by plaintiffs in conjunction with this agreement, related only to bonds of Knox County, issued on behalf of some township thereof, and was the only agreement between plaintiffs and defendant or the firm of Henderson & Shields, and that defendant Henderson was never aware that plaintiffs made any claim or pretense that the agreement between them was other or different than as above stated until after the pending suit had begun and until the trial before the referee herein during the introduction of testimony.

It is then averred that the foregoing agreement between plaintiffs and Henderson & Shields was champertous and void.

It is further averred that the defendant's firm brought suit against Knox County on certain bonds and coupons, not issued on behalf of any township thereof, and recovered judgment in the United States Circuit Court for the Eastern District of Missouri, on March 22, 1878, in the sum of $36,455.58, which was later settled and compromised for the sum of $23,618.20, whereof the fees namely, 25 per cent. thereof, received by defendant Henderson, amounted to $5904.55; that in the course of the suit, and in order to insure the successful prosecution thereof and the collection of any amount of the judgment, it became and was reasonable, necessary and proper for Henderson & Shields to expend, and they did expend, for those purposes, divers sums of money, aggregating $5911.06, and credit is claimed for this.

It is further averred that $77.93 was returned by defendant to Knox County, when that county settled by paying $23,696.13, thus making the total net amount received by defendant from the county $23,618.20, 25 per cent. of the latter amount, $5904.55, it is claimed, being due for fees.

The amount for which credit is claimed, $5911.06, is made up of 18 items.

Averring that plaintiff had not paid or offered to pay one-half of these expenses, or any part thereof, it is pleaded that the plaintiffs cannot maintain the action.

It is further set out that on April 8, 1889, the plaintiff, William C. Little, for value received, assigned to defendant Henderson all of his right, title and interest that he might be or become entitled to under or by virtue of the contract between plaintiff and Henderson & Shields, wherefore it is pleaded that William C. Little is not a necessary or proper party to the suit.

The reply of the defendants Kelerher and Little, after a general denial of the allegations in the amended answer, denies that at the time the contract set out by plaintiffs was signed, there was attached or pinned

thereto the form of agreement set out in the answer, and denies that the agreement sued on in conjunction with the form of agreement referred to and set out by defendant, was the only agreement, "or the agreement at all between the plaintiffs and Henderson & Shields; denies that defendant was never aware that plaintiffs made any claim or pretense that said agreement between them was ever different than as alleged in said third amended answer until after this suit was begun or until the trial of the suit before the referee herein." On the contrary, they aver that defendant and his co-partner, George H. Shields, accepted from these plaintiffs bonds and coupons of Knox County not issued by said county in behalf of any township of said county, and brought suit upon and obtained judgment thereon, and accepted other bonds and coupons of said county not issued in behalf of any township in said county and collected same, all under the terms of said contract set out in plaintiffs' petition, and further, received their fees for said collections.

Wherefore it is averred that defendant Henderson is estopped to deny that the contract set up in plaintiff's petition was the only contract between plaintiffs and the firm of Henderson & Shields, or to allege that there was another contract beween the parties; denies that the contract or agreement between plaintiffs and Henderson & Shields is champertous or void and pleads that the Supreme Court of this State, in this same case, decided and adjudged that the contract between the firm of Henderson & Shields and these plaintiffs was not champertous or void but on the contrary was a valid and subsisting contract.

Specifically replying to the count set up by defendant, plaintiffs, by their replies, deny all of the allegations therein contained and aver that whatever of expense the defendant Henderson incurred, which is chargeable to plaintiffs, was also incurred by defendant as attorney for the holders of bonds and coupons of Knox County other than those in which these plaintiffs were interested and that such expense

should be prorated with such other bonds and coupons.

On motion of plaintiffs, and over the objection and exception of defendant, a reference was ordered and the cause was referred to Albert Blair, Esq., as referee, to try all the issues.

The referee, after hearing the testimony in the case, made a report to the court. In this report, the referee made a finding of facts in which he, in part, adopted the finding of facts which had been made by John W. Dryden, Esq., to whom the case had been referred when first heard, that being the report and judgment thereon which our Supreme Court had when the case was before it, as see Kelerher et al. v. Henderson, 203 Mo. 498, supra. The finding of facts by Mr. Dryden, so far as adopted by Mr. Blair, as referee, in substance, finds that from the evidence in the case it appears that on December 6, 1877, "the plaintiffs had in their possession four blank printed forms of a proposition from the firm of Henderson & Shields, to bondholders, in regard to bringing suits on bonds, and of a paper or letter addressed to plaintiffs under their firm name of P. F. Keleher & Company accepting such proposition. The part of such forms that embodied the proposition had the firm name of Henderson & Shields printed at the end of it; and the part which was a form for an acceptance of such proposition was printed below it on the same sheet and directly under the printed signature of Henderson & Shields. Each of said forms was as follows:" (Here follows the form as set out by defendant in his third amended answer and heretofore copied by us.)

Proceeding, the report sets out:

"On said December 6, 1877, the firm of Samuel C. Davis & Company owned twenty-one bonds of the denomination of $500 each and one of $50, issued by Knox County, Missouri, on behalf of the Missouri and Mississippi Railroad Company, all of which bore date February 1, 1868, and were to become due on February

1, 1878; also 84 past due coupons of $35 each off of said twenty-one $500 bonds, and 4 past due coupons of $3.50 each off of said $50 bond; all of said bonds and coupons aggregating at their face value the sum of $13,504.''

On the same date, that is December 6, 1877, the referee sets out, two other bondholders named, holding like bonds and coupons, aggregating $2520, and another owning past due coupons of $35 each, amounting on their face value to $280, and the referee then sets out that on that date plaintiffs obtained their consent to an acceptance of the proposition of Henderson & Shields as embodied in the part of the blank forms above their printed signatures, filling out the blanks left in the forms, so as to show the same proposition addressed to the holders of bonds of Knox County, Missouri, of the kind so owned by Davis & Company and the others, and to also show the acceptance of said proposition printed below the same on these forms to relate to said four several lots of bonds and coupons so owned by them respectively, obtaining from them their several signatures to the form of acceptance as so filled up. These papers are as follows (we here copying the one signed by Samuel C. Davis & Co., the others being in same form, except that one of them relates to coupons alone):

"St. Louis, Dec. 6th, 1877.
To the Stockholders of Knox County,
    State of Missouri:

It is hereby proposed by the undersigned to institute and prosecute to final judgment, a suit or suits, in the Circuit and Supreme Courts of the United States, at own proper cost, charge and expense, on the matured coupons from bonds of the County of Knox, State of Missouri, issued in behalf of and to the Missouri & Mississippi R. R. Company and dated first day of February, 1868.

And upon obtaining final judgment in favor of the bondholders, to receive for services rendered therein twenty-five (25) per cent. of the total amount of bonds

and coupons involved in such suits, which shall constitute the full and entire fee to be paid to us. In case of loss of any such suit, we hereby obligate and bind ourselves to pay all costs thereon, of whatever nature, and to be entitled to no fee whatever, or other claim upon said bondholders. Provided, however, that we shall not be required to institute any suit until the amount of coupons suable against any one county in one proceeding, shall reach the sum of $5000. And provided further, that not less than twenty-five (25) per cent of the bonds—the coupons of which are to be sued upon—shall be deposited with P. F. Keleher & Co., of St. Louis, to be held by them, in trust, for the fulfillment of the terms and conditions of this proposition.

All communications to be addressed to P. F. Keleher & Co., 307 North Third Street, St. Louis.

HENDERSON & SHIELDS.

Messrs. P. F. Kelerher & Co.,
    St. Louis:

In accordance with the above proposition we hand you herewith the following matured coupons:

84 at $35.00 each
4 at $3.50 each—$2,954.

also $10,550 in bonds as described in said proposition, to be held by you in trust for the just and correct fulfillment of above proposal, which is agreed to by the undersigned.

SAM'L C. DAVIS & Co.

Witness: WM. H. GRANT.''

Following the setting out of these papers the referee proceeds:

"At the time of the signing of said acceptances said four owners of the four lots of bonds and coupons above mentioned delivered all said bonds and coupons to plaintiffs, upon trust that they would see that suits were begun and prosecuted thereon by said Henderson & Shields for their benefit, in accordance with the terms of their proposition printed and written

above said acceptances; and also delivered to plaintiffs the said four acceptances.

In the obtaining of said acceptances from said owners and the delivery of their said bonds and coupons to them in trust to have suits brought and prosecuted on them, as above found, the plaintiffs acted for and on behalf of the firm of Henderson & Shields; and subsequently, on February 20, 1878, reported to them, their action in so doing, and they, thereupon, approved the same.

"Plaintiffs also on said February 20th, delivered to Henderson & Shields all of said bonds and past due coupons, for the purpose of having them institute and prosecute a suit on them for the benefit of said owners in accordance with the terms of the proposition referred to in said four acceptances; and said Henderson & Shields then received them from the plaintiffs for the purpose of instituting and prosecuting such suit in accordance with said terms. And to evidence their having so received them for that purpose they on said day signed and delivered to plaintiffs a receipt therefor reading as follows:

'St. Louis, Feb. 20th, 1878.

Received of P. F. Keleher & Co., trustees, for the purpose of bringing suit in the U. S. Federal Courts the following described bonds and past due coupons of Knox County, Mo., issued in behalf of the Missouri & Mississippi R. R. Company.' "

Here follows a particular description of the several bonds and coupons and this receipt ends thus:,

"Said suit to be brought according to the terms of agreement herewith appended.

HENDERSON & SHIELDS."

The finding further proceeds and still following Mr. Dryden:

"At the time of the signing and delivery of said receipt, there was attached thereto another one of said blank printed forms of a proposition to bondholders with the name of Henderson & Shields printed below it, and of a paper or letter printed below same addressed

to plaintiffs under their firm name for an acceptance of such proposition, the same in every respect as that first herein above set out, all of the blanks in which were left unfilled. And at said time Henderson & Shields also signed and delivered to plaintiffs another paper, or agreement, reading as follows:"

Here follows the contract between plaintiffs and Henderson & Shields as set out on pages 502 and 503 of the decision in this case as reported 203 Mo., supra, and as set out above by us. Following this the referee finds as follows:

"The agreement above set forth was accepted by plaintiffs on its delivery to them, and they by so accepting same agreed with, and promised, said Henderson & Shields to pay to them one-half of all sums of money which it might be necessary and proper for them to expend in the prosecution of a suit against said Knox County for the collection of said bonds and coupons of said Walther, Thornberry, Stover and Samuel C. Davis & Company, in order to insure a successful prosecution of same. The consideration for the promise made to plaintiffs by Henderson & Shields in said agreement was the service rendered them by plaintiffs in obtaining from said four owners of said bonds and coupons their said acceptances of their said proposition to bring and prosecute a suit or suits for their benefit as above found, and in inducing them to deliver to plaintiffs said bonds and coupons for the purpose of having suit brought on them in accordance with the terms of their said proposition."

(Walther, Thornberry and Stover were parties whose bonds and coupons were in the Davis judgment.)

Adopting the foregoing from the report of Mr. Dryden, Mr. Blair follows and adopts the conclusion of law of Mr. Dryden, as follows:

"The result of the signing and delivering to plaintiffs by the four bond owners, . . . of their acceptances of the proposition printed and written above the printed signature of Henderson & Shields; the approval by the latter, when informed of it, of plaintiffs'

action in obtaining said acceptances; and the receiving by them from plaintiffs of the bonds and coupons mentioned therein for the purpose of bringing suit thereon, was, in my opinion, the making by them (plaintiffs) of a contract with each of said owners to bring and proscute to judgment a suit against Knox County for the amount of his particular bonds or coupons mentioned in the four acceptances, upon the terms of their (said Henderson & Shields) paying all the costs and expenses of such suit, and of receiving for their fees for so bringing and prosecuting same, twenty-five per cent. of the amount of whatever judgment should be gotten therein in favor of such owner, and nothing in case of their failure to recover any judgment. And the effect of the agreement of Henderson & Shields with plaintiffs of Febuary 20 1878, read in connection with the receipt of the same date given by them to plaintiffs contemporaneously with it, was that they thereby agreed with plaintiffs that they would pay to them one-half of all fees that might be received by them for their services in bringing and prosecuting such suit as they should bring to recover all of said past due coupons and bonds pursuant to the terms of said contract for bringing same that had theretofore been made by them with said four owners thereof; the plaintiffs, however, to pay to them one-half of all sums that it might be necessary and proper to expend in the prosecution of such suit in order to insure success in its prosecution.

Such, I think, is the fair interpretation of the language of the two papers—the agreement and the receipt—when construed together as one instrument, as, in view of the fact that they were made contemporaneously and as parts of one transaction, they evidently should be. The plain meaning of the two was, that it was agreed that plaintiffs and Henderson & Shields should share equally the fees the latter would earn and the costs and expenses they would expend, in the prosecution of a suit to be brought by them to enforce payment of said bonds and coupons under the terms of an agreement or contract, previously made by them with

some one. With whom such agreement was, or what were its terms did not appear on the face of either of the papers except as found in the references therein to an agreement or contract 'appended to said receipt.' But that reference was of no avail, for the reason that no actual contract or agreement by Henderson & Shields with any one was in fact appended to the receipt. The only paper shown to have been attached to the receipt was a blank form of a proposition of Henderson & Shields for bringing suit on bonds, and of an acceptance of the same, such as plaintiffs had used in procuring from said four owners their acceptances of the proposition of Henderson & Shields to sue on their bonds and coupons. That was not, in truth, an agreement or contract at all, and the description of the agreement or contract in accordance with the terms of which the suit referred to in the agreement of February 20th was to be brought, as given both in it, and in the receipt, was plainly a false, or incorrect one. But it does not seem to me that though thus false, and incorrect, as to such description, the whole agreement should fail on that account. It ought to be so construed as that it will stand rather than fall, if possible. And that I think can be done. Rejecting the words of false description in the two papers, namely, 'herewith appended' in the receipt, and 'appended to said receipt' in the agreement, there yet remains enough to show that the suit to be brought by Henderson & Shields was to be one to recover the amount of the bonds and coupons enumerated in the receipt, and that was to be brought in accordance with the terms of some contract previously made by them with some one. And, upon the principle expressed in the maxim, *falsa demonstratio non nocet,* I think that resort may be had to extraneous evidence in order to identify the contract which was within the intent of the parties, and was so referred to. And, such resort being had, there can be no doubt that the reference was to the contracts with the four owners various coupons and bonds enumerated in the receipt, and whose names were set out opposite the lists of same therein; all which contracts

so far as to the terms as to fees and payment of costs and expenses by Henderson & Shields were concerned, were exactly the same, and were obviously the only contracts made by them with any one with reference to suing on said bonds and coupons. And so I have concluded, as above stated, that the effect and meaning of said agreement of Henderson & Shields with plaintiffs of February 20, 1878, and their said receipt to them of the same date, was, that they thereby agreed with plaintiffs to pay to them one-half of all the fees that should be received by them for their services in bringing and prosecuting a suit for the recovery of all said bonds and coupons of said four owners in accordance with the terms of their said contracts with them of date December 6, 1877, but with the provision therein that plaintiffs should pay to them half of all sums that should be necessary and proper for them to expend in the prosecution of it in order to insure a successful termination of it.''

On this, Mr. Dryden, as referee, held the contract champertous and to this holding the Supreme Court did not agree.

The present referee, Mr. Blair, then refers to the various exhibits which were in evidence before him, consisting of plaintiffs' contract with Henderson & Shields, receipt of Henderson & Shields for bonds and coupons delivered to them at the time the contract was signed, the form of circular said to have been attached to the second paper above, and the contract with the four parties before referred to, and he thereupon takes up the facts upon which the defendant bases his claim for recovery of expenses. Mr. Blair, as referee, after stating that he would thereafter consider the facts upon which defendant bases his defenses, and stating that he had, as above, ascertained the subject-matter of the contract into which plaintiffs and defendant had entered, proceeds: ''It remains to consider in what manner the contract was performed and whether the performance by each party fulfilled his full duty in the premises.'' He thereupon sets out the summary of the testimony, analyzing it, with his finding as to the bonds and cou-

pons put up by the several parties, the bonds of all four of these parties being embraced in the suit and covered by the judgment in the Samuel C. Davis & Company Case, and finds, that as shown by the stipulation the sum to which defendant's firm was entitled for their services was $5904.55.

The learned referee thereupon takes up the claim of the defendant for an allowance for expenditures and, giving a summary of the testimony relating thereto, allows $3313.26 in favor of defendant on account of these expenditures, disallowing $2597.80 claimed by defendant. The plaintiffs, in claiming $10,000 as the amount they were entitled to, included fees which it was alleged that the firm of the defendant, or the defendant, had received in other litigation as to like bonds, and claimed that the expenditures incurred were for those as well as for the recovery of the Davis judgment and that it should be prorated. The referee declined to allow this, however, limiting the contract on which recovery was to be had to the bonds and coupons enumerated in the receipt taken by plaintiff at the time the contract was signed and embraced in the Davis & Co. action and judgment.

Taking up the contention of the defendant, that there is no contract appended to the receipt but that the paper appended was simply a blank form of contract and that no recovery can be had, the referee holds that this contention is not meritorious. He also overrules the contention of the defendant that the plaintiffs' promise to pay half of the expenses incurred in the litigation is a condition precedent, the performance of which must be alleged and proved before recovery can be had.

Next, taking up the contention of the defendant that, notwithstanding the decision and opinion of the Supreme Court in this case, as set out in 203 Mo. 498, under the evidence now before the referee, the defense or plea of champerty should be sustained, the learned referee finds that while these charges sound formidable he "fails to discover in the present body of the evi-

dence anything inculpatory that plaintiffs did or knew which was not shown in the evidence before the Supreme Court. For that reason the referee will not attempt to obviate the ruling of the Supreme Court upon the question of champerty.''

Disposing of other points made and which we do not think it necessary to here consider, the referee concludes and finds ''that on September 15, 1894, the defendant had collected fees in the suits covered by the contract sued upon, amounting to $5904.55. The referee further finds that in the course of conducting such litigation and collecting such fees the defendant had incurred 'reasonable expenses which were necessary and proper for the defendant to expend to insure the successful prosecution of such suits' in the sum of $3313.26. These two sums are to be shared equally between plaintiffs and defendant. Deducting $3313.26 from $5904.55, leaves $2591.29, as the net result of the speculative litigation in which the parties by contract embarked, one-half thereof, to-wit, $1295.65 belongs to the plaintiffs. Accordingly the referee finds and declares that on the 15th day of September, 1894, the defendant became indebted to the partnership firm of Keleher & Company (consisting of P. F. Keleher and William C. Little, plaintiffs herein) in the sum of $1295.65.''

Exceptions were filed by both parties to this report. Pending the determination of these, the deaths of William C. Little and John B. Henderson was suggested and their respective administrators duly entered their appearances, the cause being revived in the names of these representatives, both adopting the pleadings of the respective parties for whom they were substituted and agreeing that the submission of the cause heretofore made was not to be affected by the death and revivor.

The court overruled the exceptions of both parties to the report of the referee, save in this: the court, sustaining certain exceptions of defendant, found that on April 8, 1898, the plaintiff Little had made an assignment in writing to the defendant Henderson of

all of his right, title and interest in and to the contract sued upon as collateral security for the payment of his individual indebtedness to Henderson in the sum of $2500, evidenced by his note, and that by his assignment he authorized Henderson to hold and appropriate to his own use so much of the proceeds of the contract or claim as would be coming to Little out of the proceeds of the contract or claim upon final adjustment thereof; that on September 15, 1894, plaintiff Little was still indebted to the defendant Henderson upon said note in the sum of $1315.05, for the payment of which the interest of Little in the contract sued on was pledged as collateral security and that this sum, or balance due upon the note had never been paid or tendered to defendant and remains due and unpaid; that under these circumstances, plaintiff Little was not entitled to recover a joint judgment with his co-plaintiff Kelerher against the defendant Henderson for the amount found by the referee to be due on September 15, 1894. The court further holds as a conclusion of law that, notwithstanding the assignment by Little to Henderson of his interest in the contract sued on and the inability of Little to recover, plaintiff Kelerher is entitled to recover his interest in the proceeds of the contract, and the court finds that his interest is one-half of the sum ascertained and found by the referee as due Kelerher and Little, to-wit, $647.82. The court thereupon entered a judgment in favor of Kelerher as against the administrator of the estate of Henderson, for the sum of $647.82, with interest thereon from October 17, 1894, at 6 per cent. per annum, amounting at the date of the judgment, namely, November 10, 1913, to the sum of $1388.81, and the costs of this proceeding, and ordered that the judgment be certified to the probate court of the city of St. Louis. It is further adjudged that the administrator of Little, deceased, take nothing by the suit and that as to him the judgment be entered in favor of the administrator of Henderson.

Both parties filed motions for new trial and in arrest of judgment which were overruled and plaintiff Kelerher and the administrator of Henderson duly appealed to our court, the administrator of Little taking no appeal. It may be noted that Judge Shields, as it appeared, had assigned his claim to recovery for expenditures to General Henderson.

The report of the testimony in the case by the referee is voluminous, that testimony consisting of something like 565 pages. The whole abstract presented to us, which is the joint abstract of the parties, excluding the index, contains 709 pages. In addition to this the learned counsel for the administrator of Henderson, appellant, filed an abstract containing that part which relates particularly to the allowance in favor of plaintiff, and disallowance of items claimed by defendant, embracing also the judgment and defendant's motion for new trial, as well as in arrest.

The report of the referee embodying also the stipulation that was entered into between the parties covers 99 pages of printed matter.

Learned counsel for appellant and respondent Kelerher make six points; those for the administrator of defendant, also appellant and respondent, make seven, and have filed, as well as orally, made very able arguments. We do not think it of any practical use to notice them in detail, but shall endeavor to meet them generally.

## OPINION.

REYNOLDS, P. J. (after stating the facts as above).—This last tried case was appealed to the Supreme Court. That court holding the amount in controversy was not within the jurisdiction of that court but of ours, transferred it to our court, as see Kelerher v. Johnson, 272 Mo. 699, 199 S. W. 935. The only comment upon the issues in it is at page 702, where it is said: "Defendant does not plead a counterclaim, nor does he seek affirmative relief, but raises only such issues as would, if allowed, defeat the plaintiff's right to a recovery."

This is the second trial of this case in the circuit court. On the first trial it was sent to a referee, who dismissed the cause on the ground that the contract between the parties was champertous. The cause was appealed to our Supreme Court, that contention was overruled and the cause remanded, as see Kelerher v. Henderson, 203 Mo. 498, 101 S. W. 1083.

It is urged by learned counsel for the administrator of Henderson that the matter of the contract between plaintiffs and Henderson & Shields and between the plaintiffs Kelerher & Company and the bondholders who placed bonds and coupons in their hands, as now shown, was not before the referee or the Supreme Court at the former trial and that therefore the question of whether this is a champertous contract is an open question. We cannot accede to this view. While it is true that the court held, when the case was before it, that the defense of champerty was an affirmative defense which must be pleaded, and that it had not then been pleaded, a careful reading of the opinion discloses that the Supreme Court did have before it this contract between the bondholders and Kelerher & Company and, in effect, held that while that contract might be champertous, the contract between the plaintiffs and Henderson & Shields was not subject to that claim. So the referee who last passed on the case held. We do not feel called upon to express our own view on this question, but feel bound to follow the decision of our Supreme Court in its decision on it in this same case and so hold the contract between plaintiffs and the firm of Henderson & Shields is valid.

It is now the settled law of our State, as we understand it, that this being a suit at law and involving a long account which would make it a case for compulsory reference, the finding of the referee, when approved by the trial court, has the force and effect of a special verdict of the jury and is binding on appeal, if supported by substantial evidence. That is the rule of decision announced by our Supreme Court in the case of City of St. Louis to the use of Carroll-Porter Boiler

& Tank Co. v. Parker-Washington Company, 217 Mo. 229, 196 S. W. 767, commonly referred to as "the Parker-Washington Company Case." That was a case heard and determined *in banc*. The opinion was by Chief Justice GRAVES, rendered in division, and adopted *in banc*, all concurring except Judge BOND, who dissented in an opinion filed, Judge WOODSON concurring in the result. That opinion was under review by the Supreme Court in Johnson v. Star Bucket Pump Co., not yet officially reported, but see 202 S. W. 1143, the opinion again written by Chief Justice GRAVES and concurred in by Judges BLAIR and WILLIAMS, Judge FARIS concurring in the result. Judge BOND dissented in a separate opinion in which Judges WALKER and WOODSON concurred. It was again before our Supreme Court in Roloson v. Riggs, not yet officially reported but see 203 S. W. 973. That case was also *in banc*, the opinion being written by Mr. Commissioner Railey and that was adopted as the opinion of the court, Chief Justice GRAVES and Judges FARIS, BLAIR and WILLIAMS concurring, Judge WALKER concurring in the result, and Judge WOODSON concurring in all except what is there said in affirmation of the majority view in the Parker-Washington Company case. Judge BOND alone dissented, because, as he states, the opinion does not state correct rules of review in compulsory reference cases. We may conclude, therefore, that the rule announced in the Parker-Washington Company Case, supra, is to be accepted as the rule in our State. It follows that in this, an action at law, the finding of the referee, confirmed in main as it was by the court, is to be taken and considered as in a special verdict of the jury in actions at law. It is true that the learned trial court made some supplemental findings, modifying in some respects the result reached by the referee, but he was entirely within the facts and the law, indeed was proceeding by agreement of counsel in these modifications. We find a somewhat similiar rule prevailing in the State of Kentucky, in Howell v. Chaney, 180 Ky. 646, 203 S. W. 536, the Court of Appeals of that State holding that it

was immaterial as to whether the parties had consented to a reference as long as the report of the master was regularly made, since that report was merely advisory to the trial court; and the only question about which the appellate court need concern itself is whether the judgment is sustained by the evidence.

We see no error whatever in the finding in favor of the plaintiff Kelerher, assuming that the contract was not champertous. In point of fact, there was no dispute by defendant that that is correct—the question of champerty out of the way. Plaintiff Kelerher now claims it should be for a larger sum. We do not agree to that, as we think it awarded Mr. Kelerher all to which he is entitled under the testimony, and is supported by substantial testimony.

The items claimed and allowed in favor of defendant consisted of expenses connected with enforcing the payment of the judgment in the name of Samuel C. Davis & Company, and which the defendants had obtained and which services were rendered either through themselves or through others that they employed. The contract, to repeat it so far as here necessary, reads: "It being understood that said P. F. Kelerher & Company shall pay one-half of any and all reasonable expenses or sums of money that may be necessary and proper for us to expend to insure the successful prosecution of said suit.. In other words, said P. F. Kelerher & Company to share equally with us in the expenses and profits accruing from said suit." Beyond all question, no profits could accrue from that suit unless the judgment was collected in whole or in part. So the learned referee construed it. We do not think, therefore, that the position of learned counsel for plaintiff is sound, when they contend that no expenses were to be charged up against plaintiffs to which they were to contribute except such as were incurred in obtaining the judgment itself. Obtaining the judgment itself, without satisfaction of it in whole or in part, could by no possibility yield profits. All the expenses which were allowed were those which the

referee found to be proper and necessary expenses connected with the obtaining of payment of 65 per cent. of the judgment. There was substantial evidence of these and that they were reasonable. So the referee found. As we read the testimony bearing on this, we think the referee was correct both on the facts and on the law.

We do not think it will serve any useful purpose to set out in detail even a synopsis of the voluminous testimony taken in this case. It is substantially reviewed by the referee in his finding and by counsel in their very elaborate and elucidative briefs and arguments.

We find no error to the prejudice of either party in the rulings of the referee or to the action of the learned trial court in passing upon his report, nor in the judgment which that court rendered.

The judgment of the circuit court is affirmed. *Allen, J.*, concurs; *Becker, J.*, not siting.